UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>THE INTERIOR, et al.,<br><br>    Defendants. | No. 6:24-CV-081-H |

**ORDER**

Before the Court is the Center for Biological Diversity's motion to intervene (Dkt. No. 14). The Center moves to intervene in this case on behalf of the defendants, both as of right and permissively. All parties currently involved in this case oppose the Center's intervention. *See* Dkt. Nos. 19; 20. The Center fails to rebut the presumption that the defendants adequately represent its interests, so the Court denies the Center's motion to intervene as of right. The Court also concludes that permissive intervention would be inappropriate but the Center may seek leave to appear as amicus curiae instead. The Court thus denies the Center's motion (Dkt. No. 14).

1. **Factual and Procedural Posture**

Texas brought this suit against the United States Department of the Interior, the United States Fish and Wildlife Service, and agency officials, challenging an administrative rule regarding mussels. *See* Dkt. No. 1. The defendants answered. Dkt. No. 7. The parties are now litigating under a scheduling order, with the plaintiff's motion for summary judgment due December 5, 2025. Dkt. No. 12 at 3. The defendants will file a cross motion

for summary judgment by January 30, 2026. *Id.* Briefing in this case is set to conclude by April 3, 2026. *Id.*

The Center moved to intervene in this case, both as of right and under Federal Rule of Civil Procedure 24(b). Dkt. No. 14. "The Center is a national nonprofit environmental organization that works through science, law, and media to protect imperiled species and their habitats." Dkt. No. 14-1 at 17. It contends that its members have "recreational, aesthetic, scientific, conservation, and economic interests related to the Central Texas Mussels and their habitat," and it provides declarations of its members in support of this assertion. *Id.* Further, the "Center has worked for years to achieve federal ESA protection for the Central Texas Mussels." *Id.* Both Texas and the defendants oppose intervention. Dkt. Nos. 19; 20. The Center replied. Dkt. No. 22. This motion is thus ripe.

**2.    Legal Standard for Intervention**

Federal Rule of Civil Procedure 24 governs intervention. "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (quoting *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015)).

Rule 24(a) governs intervention as of right. Under Rule 24(a), the proposed intervenor as of right must either be "given an unconditional right to intervene by a federal statute," *id.* 24(a)(1), or meet the four requirements of Rule 24(a)(2). *See Texas*, 805 F.3d at 657. If a party seeks intervention under Rule 24(a)(2), then (1) the application to intervene must be timely, (2) the applicant must "claim[] an interest relating to the property or transaction that is the subject of the action," (3) the applicant must be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to

protect its interest," and (4) the existing parties must not "adequately represent that interest." Fed. R. Civ. P. 24(a)(2); *see also Texas*, 805 F.3d at 657. Failure to satisfy any one of these requirements precludes intervention as of right. *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007).

Rule 24(b) governs permissive intervention. Under Rule 24(b), the proposed permissive intervenor must either be given a "conditional right to intervene by a federal statute" or have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Permissive intervention is "wholly discretionary with the [district] court" even if "there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987) (alteration in original).

3. **Analysis**

    A. **The Center is not entitled to intervene as of right.**

    The dispute between the existing parties and the intervenor centers around the requirement that the parties not adequately represent the Center's interest. *See* Fed. R. Civ. P. 24(a)(2). While the requirements of Rule 24 are not to be strictly construed, "where the party whose representation is said to be inadequate is a governmental agency, a much stronger showing of inadequacy is required." *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994).

    In *Texas v. United States*, the Fifth Circuit considered whether three Jane Does had the right to intervene in Texas's suit against the United States over the latter's program entitled Deferred Action for Parents of Americans and Unlawful Permanent Residents. 805 F.3d at 655–56. The district court denied the motion, concluding that the United States adequately

represented the Does' interests. *Id.* at 656. That court noted that there is a presumption of adequate representation when the putative representative is a governmental body or officer charged with representing the interests of the intervenor. *Id.* at 661. When this presumption applies, the proposed intervenor must show that its interest is in fact different from the governmental entities' and that the governmental entity will not represent the proposed intervenor's interest. *Id.* at 662.

The Fifth Circuit held that the Does rebutted this presumption. *Id.* at 662. That court explained that a proposed intervenor rebuts this presumption when it demonstrates divergence in key and concrete respects. *See id.* In contrast, where a proposed intervenor asserts only at a high level of generality that there is a divergence because a governmental entity's interests may be broader, then intervention as of right is not warranted. *Id.* at 662–63. In the Does' case, they "specif[ied] the particular ways in which their interests diverge[d] from the Government's." *Id.* at 663. The Does then "identif[ied] the particular way in which these divergent interests have impacted the litigation." *Id.* Further, the Does pointed to the government's purported misconduct in the case for which the district court had scolded the government and held hearings on those matters. *Id.* at 663–64.

Here, the presumption of adequacy applies. The defendants are governmental entities and the ones responsible for defending the rule at action in this case. *See Louisiana v. Burgum*, 132 F.4th 918, 922 (5th Cir. 2025) (applying the presumption because the proposed intervenor and the governmental defendant had the same ultimate objective: "to uphold the Rule").

The Center asserts that its interests and the defendants' interests diverge because the defendants "have historically opposed the Center's interests in the [mussels'] timely and

– 4 –

effective protection." Dkt. No. 14-1 at 24. The Center bases this argument on the history of the regulation because "it took almost two decades and multiple rounds of litigation filed by the Center to compel the [United States Fish and Wildlife Service]." *Id.*

The Center also points out that "the government rarely has the same objectives as the Center because it must balance multiple interests and stakeholders." *Id.* This argument is too general to support intervention in a particular case. *See Hopwood*, 21 F.3d at 605 (rejecting the proposed intervenors' argument that they and the state had diverging interests because "the State must balance competing goals while [the proposed intervenors] are sharply focused on preserving" the challenged policy); *Burgum*, 132 F.4th at 922–23 (same).

The Center also relies on recent actions, orders, and statements from the current administration. *See* Dkt. No. 14-1 at 24-28. The Center points, for example, to the Service's move for voluntary vacatur of a final rule regarding a listing of a species under the Endangered Species Act, an executive order directing agencies to review actions that are unduly burdensome to energy exploration and development, and the nomination of Brian Nesvik to the be the director of the Service. *Id.* But as the Center acknowledges, "to the Center's knowledge, the current administration has not yet made specific comments about the [mussels]." *Id.* at 26.

Even assuming these concerns made at a high level of generality could support intervention in cases without this presumption, these identified facts do not rebut the presumption. The administration's decisions in another case about another administrative action say nothing of the government's interest in this case. Further, the executive actions about environmental policy writ large do not rise to the level of rebutting the presumption in this case. The administration may be taking different approaches to regulatory policy than

the Center may prefer. But the defendants in this case are charged with defending a regulation that is already final, and it has to date acted consistently with its charge. *See generally* Dkt. No. 7.

The parties and Center agree that this case will be decided on the administrative record. *See* Dkt. Nos. 11 at 1–2; 22 at 6–7. The Center does not suggest that it will contribute factually to the development of this case, that it has additional defenses or claims, or any other meaningful difference between it and the defendants in this case. *See generally* Dkt. No. 14-1. Rather, the Center asserts generally that it can ensure that the record is complete. Dkt. No. 22 at 6–7. The Center presents no basis to suggest that the record will be incomplete. *See id.* Further, the Court sees no risk that the defendants will not provide a complete record or that Texas will not ensure that the record is complete as part of the existing adversarial posture. And finally, it is not the norm of the courts or non-agency parties to play a meaningful role in compiling the administrative record—that is for the agency. *See, e.g.*, *E.R. ex rel. E.R. v. Spring Branch Indep. Sch. Dist.*, 909 F.3d 754, 764 (5th Cir. 2018) (noting that "rendering a decision on the record compiled before the administrative agency is the norm") (citation altered) (quoting *West Platte R-II Sch. Dist. v. Wilson*, 439 F.3d 782, 785 (8th Cir. 2006)).

Other cases involving divergent interests between a proposed intervenor and a governmental entity further show the distinctions between cases like *Texas v. United States* and this case. In *Entergy Gulf States Louisiana, LLC v. United States Environmental Protection Agency*, 817 F.3d 198 (5th Cir. 2016)—a case that the Center cites—the Fifth Circuit held that the Sierra Club and the Environmental Protection Association had divergent interests in the strategy of the litigation because there was actual disagreement between those two

entities, specifically as to document disclosure and whether to stay or bifurcate the case. *Id.* at 204.

Other cases are likewise distinguishable. In *Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994), for example, the court determined that two trade associations representing timber purchasers had the right to intervene a suit that environmental groups brought against the United States Forest Service. In that case, the intervenors did not move to intervene until after "the Forest Service issued a letter advising prospective timber purchasers that" it would refrain from offering planned timber sales beyond the scope of the court's preliminary injunction. *Id.* at 1204. That letter thus presented particular evidence about the case at issue, suggesting that the Forest Service's interests were not aligned with those of the timber purchasers. *See id.* at 1207–08. That particular action rebutted any presumption.

Again, the Center here can point to no particular action by the government. *See* Dkt. No. 14-1 at 26. Rather, the Center's motion to intervene resembles the one that was properly denied in *Louisiana v. Burgum*. There, the American Petroleum Institute sought to intervene to defend a rule that the Bureau of Ocean Energy Management (BOEM) adopted. 132 F.4th at 920. The Institute "argued that the BOEM's representation was inadequate because [it's] members benefited from the Rule and would make arguments different from BOEM's." *Id.* at 921. It filed a proposed answer nearly identical to the agency's. *Id.* The court reiterated the rule that general interests between private entities and the government are insufficient to rebut the presumption. *Id.* at 922–23. It then noted that, like here, the Institute did "not discuss any action taken by BOEM that is adverse to its own interest." *Id.* at 923. It further noted that "the mere possibility that" the interests may diverge "does not rebut the . . . presumption of adequate representation." *Id.* (first quoting *Bush v. Viterna*, 740

F.2d 350, 358 (5th Cir. 1984); and then quoting *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022)). Thus, the court concluded, the Institute had "failed to show that BOEM's interests [were] adverse to its own." *Id.* The Center's motion in this case suffers the same failure.

In sum, the Center has not rebutted the presumption that the defendants are adequately representing the interests of the Center. The Center has identified no additional defenses or claims, no realistic possibility of developing the record, no difference between how the defendants have litigated the case so far and how the Center would litigate the case, and no particular evidence to believe that the defendants will not defend the final rule to the best of their ability and in accordance with their duty. The defendants thus adequately represent the interests of the Center, making intervention as of right not available for the Center. *See Sierra Club*, 18 F.3d at 1205 ("If a party seeking to intervene fails to meet any one of [the requirements of Rule 24(a)], it cannot intervene as of right."). The Court thus does not address whether the Center meets the other requirements of Rule 24(a)(2).

**B.     The Court denies the Center's request for permissive intervention.**

A court may also permit a party to intervene who "is given a conditional right to intervene by a federal statute" or "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(i)(B). This Court has substantial discretion in allowing permissive intervention. *Kneeland*, 806 F.2d at 1289. As the Center admits, it is not seeking to present "a counterclaim, cross-claim, or any other claim for relief." Dkt. No. 14-1 at 30. It also does not appear to have any particularly unique defenses and has identified none that the defendants in this case could not raise. *Compare* Dkt. No. 7, *with* Dkt. No. 14-5. The Center's other reason for supporting its motion for

permissive intervention is the potential to develop the facts of the case, but as the Court has already explained, this argument is not convincing. *See supra* Analysis § 3(A). The Center is thus merely seeking to "express a unique view offered by neither party." *Burgum*, 132 F.4th at 924 (quoting *Richardson v. Flores*, 979 F.3d 1102, 1106 (5th Cir. 2020)). In this situation, "the proper procedure is to move to appear as *amic[us] curiae*, not to move to intervene." *Id.* (quoting *Richardson*, 979 F.3d at 1106). The Court thus enforces the proper procedure. The Center may move to appear as an amicus to the Court. But the court exercises its vast discretion and denies the Center's request for permissive intervention.

So ordered on September 15, 2025.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE